IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DIANNE SHEDD, | ) |
| Plaintiff | ) ) ) |
| vs. | ) CASE NO. CV98-HGD-2743-S ) |
| STATE OF ALABAMA JEFFERSON COUNTY DEPARTMENT OF HUMAN RESOURCES, | ) ) ) ) |
| Defendant | ) ) |

FILED
99 AUG -6 PM 2:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
AUG 0 6 1999

## MEMORANDUM OPINION

Defendant, the State of Alabama Jefferson County Department of Human Resources (DHR), has filed a motion for summary judgment with respect to all claims asserted in this action by plaintiff, Dianne Shedd. Plaintiff was afforded the opportunity to submit opposition to the motion for summary judgment. Ms. Shedd filed a response to the motion, and defendant filed a reply. The parties have consented to the exercise of jurisdiction of the undersigned magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73, Fed.R.Civ.P. The motion for summary judgment is now ready for ruling.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was employed by DHR until October 31, 1997. According to defendant, Ms. Shedd was terminated from her position for failure to meet job performance expectations. On October 31, 1997, Mike Galloway, DHR Acting Director, gave a letter to plaintiff terminating her employment

31.

with DHR as a Service Social Worker I/II in the Child Welfare Program. The reasons given were failure to attend a scheduled court hearing, failure to comply with court orders and case plans regarding visitation and provision of service to families assigned to her, failure to submit court reports in a timely manner. Also considered was a charge that plaintiff pushed a three-year-old child in DHR's care against a wall, held her arm and screamed at her. The letter refers to an administrative hearing held on October 31, 1997, regarding the incident.[1]

On December 5, 1997, Ms. Shedd filed a charge of discrimination pursuant to Title VII with the EEOC, alleging she was discriminated against on the basis of her race and sex. She averred that a white male co-worker had been accused of pushing a child; however, he was verbally counseled rather than fired. The EEOC subsequently asked Mike Galloway to respond to the charge made by plaintiff. On June 30, 1998, the EEOC issued its determination that it was unable to conclude that the information obtained established a violation of Title VII and notified plaintiff of her right to file suit. It is undisputed that plaintiff never filed a charge of discrimination based on her age or disabilities with the EEOC.

Plaintiff commenced this action by filing a *pro se* complaint against defendant on October 29, 1998 [Document #1]. She alleged that she was discriminated against on account of her age and disabilities "with a lateral move within the agency." She also alleged her employment was terminated because of her disabilities and "the State's perception of [her] as a whistleblower." She invoked 42 U.S.C. § 1983 as the basis for the court's jurisdiction.

On November 23, 1998, DHR filed a Motion to Dismiss or, in the Alternative, Motion for More Definite Statement [Document #5]. As grounds, it asserted plaintiff's claims under 42 U.S.C.

---

[1] In submissions in this case, plaintiff denies that she pushed the child into a wall or screamed at her.

2

§ 1983 were barred by absolute immunity under the Eleventh Amendment. It also contended that plaintiff's claims were so vague and conclusory that she failed to state a claim upon which relief could be granted. In an order entered February 23, 1999 [Document #10], the undersigned advised plaintiff that any claim for damages under 42 U.S.C. § 1983 against defendant would be subject to dismissal as a result of absolute Eleventh Amendment immunity. The undersigned also stated that plaintiff appeared at be attempting to allege violations of the Americans with Disabilities Act (ADA) and the Age Discrimination in Employment Act (ADEA), as well as retaliation; however, plaintiff's allegations were so vague and conclusory that she would be required to submit a more definite statement of her claims and the basis therefor. The order directed plaintiff to provide certain information with respect to each of her claims.

On March 11, 1999, Ms. Shedd filed a response to the February 23 order, providing details and exhibits in support of her claims against defendant. With respect to the lateral move alleged to have been discriminatory, plaintiff averred that at the time of the move, plaintiff was 45 years of age, and the person chosen to replace her, Joanna Finley, was in her late twenties to early thirties.

With respect to the claim of disability discrimination, plaintiff averred that when she was hired by DHR, she was represented by Vocational Rehabilitation Services, another state agency, with Patricia Cook as her counselor and John James as her supervisor. She states she was assisted by Vocational Rehabilitation because she had been diagnosed with chronic lung disease, three types of arthritis and bipolar disorder.

Ms. Shedd alleges that she also has had difficulty with defendant when she was a client, as well when she was an employee. On November 1, 1993, she requested assistance with obtaining child support from her child's father residing in Florida. On October 27, 1995, the State of Florida notified

3

Alabama that it was ready to enforce the child support order and only needed a signed statement from plaintiff. Plaintiff avers she was unable to get an appointment with DHR for this purpose until July 26, 1996.

Ms. Shedd has provided the court with various memoranda and letters to and from plaintiff that she feels have a bearing on her case, which include:

A. Job vacancy announcement dated April 1, 1996, regarding Prescott House Liaison position.

B. Letter from plaintiff to Vanessa Bolling, DHR Administrative Assistant, dated April 16, 1996, in which plaintiff asks to be considered for the position of Prescott House Liaison.

C. Letter from plaintiff to Vernon Morgan, DHR Child Welfare Administrator, dated May 7, 1996, regarding Prescott House Liaison position. Plaintiff complains about being denied the position in favor of Joanna Finley and states her belief that she is more qualified that Finley. Plaintiff asks that Morgan interview her for the position. The letter concludes with plaintiff's statement that "The EEOC has set certain guidelines in presenting a grievance to them."

D. Memorandum from Vernon Morgan to plaintiff dated May 8, 1996, in response to plaintiff's May 7 letter. Mr. Morgan informs plaintiff that Ms. Finley was tentatively selected for the Prescott House Liaison position. He also states that this was not a promotion but a lateral reassignment, and candidates were not competitively ranked.

E. Letter from plaintiff to Lucia Parsons, DHR Assistant Director, dated September 25, 1996, regarding plaintiff's non-selection for Prescott House Liaison. Plaintiff attached copies of her letters to Ms. Bolling and Mr. Morgan, and states Mr. Moragn was "unable or unwilling to give a direct answer the two questions on which I can make an EEOC complaint [sic]."

F. Memorandum from plaintiff to the State Department of Human Resources and the Office of Civil Rights dated October 1, 1996, regarding "Lateral Reassignment." In this memorandum, Ms. Shedd complains about Joanna Finley's assumption of the position as Prescott House Liaison and questions her qualifications for the job. Plaintiff states that if Finley is not over 40 or does not have a disability, plaintiff's civil rights have been violated.

4

G. Letter from plaintiff to ASEA State Office dated June 19, 1997. Plaintiff complains in the letter that she is unable to do a quality job because her supervisor is ineffective and unhelpful, her caseload is twice that required by consent decree, and the agency is underfunded. She encloses copies of memoranda to her from her supervisor, which she claims to contain "half-truths and innuendo," and memoranda from plaintiff to her supervisors complaining about the heavy caseload and its impact on her ability to perform her job in an effective manner.

H. Letter from Dr. Dewey Jones dated June 24, 1997, regarding plaintiff. The letter states plaintiff has a history of left knee pain and a torn medial meniscus, and that arthroscopic surgery is necessary. The estimated recovery period is two to four weeks.

I. Memorandum from plaintiff to Mike Galloway dated August 12, 1997, requesting a transfer to Permanent Planning if it involves court reviews and court reporting, or to remain in on-going services if Permanent Planning does not involve such duties.

J. Memorandum from plaintiff to Mike Galloway dated August 16, 1997, requesting the reason plaintiff was not placed in Permanent Planning when another worker who had not requested such placement was so transferred.

K. Memorandum from Mike Galloway, Child Welfare Administrator, to plaintiff dated August 21, 1997, regarding "Work Assignments" in response to plaintiff's August 18, 1997, inquiry about the basis for work assignments. Mr. Galloway states his management team provides recommended assignments for his review and approval, and assignments are made on the basis of their assessment of the skills and experience of the social workers and their stated preferences. However, the needs of the agency outweigh individual staff preferences.

L. Report of Court Activity from Denise Anderson to Loree Williams dated September 16, 1997, regarding plaintiff's failure to attend a court hearing on September 15, 1997, in the *Buddenhagen* case.

M. Letter from plaintiff to Loree Williams, Service Supervisor II, dated September 25, 1997, regarding "Health Issues." The letter referred to Williams' statement of September 16, 1997, that she was not aware of plaintiff's health problems, which plaintiff avers were discussed with Williams two years before. In the letter, Ms. Shedd provides the names and telephone numbers of various health care providers, and a list of her medical problems and medications:

| | |
|---|---|
| Bipolar disorder | Effexor |
| Spastic stomach | Phenobarbital |
| Chronic bronchitis and recurring pneumonia | Zithromax, Tavist D, Vancenase Vanceril, Viralizer |

5

| | |
|---|---|
| Arthritis | Anaprox, Pondimin |
| Soft tissue inflammation | |
| Inflammatory degenerative disease | |
| Rheumatoid arthritis | |
| Lupus | |

N. Memorandum from Loree Williams, Service Supervisor II, to plaintiff dated October 9, 1997, regarding "Job Performance Warning." The memorandum refers to a June 16, 1997, job performance memorandum to plaintiff citing problems with timely submission of court reports, visiting with families in advance of court hearings and within seven days of receiving new cases, timely provision of family services, and timely completion and reviews of ISPs. Ms. Williams also referred to plaintiff's failure to attend a court hearing on September 15, 1997. Plaintiff was advised she was expected to attend all scheduled court hearings, make visits with families within seven days of receiving new cases and monthly visits thereafter, prepare and submit court reports by specified times, and timely provide family services.

O. Memorandum from plaintiff to Loree Williams, Service Supervisor II, dated October 15, 1997, regarding "Response to Job Performance Warning." Plaintiff expresses her opinion in the memorandum that the warning was given in an attempt by DHR to cover its inability to comply by a consent decree. Plaintiff stated she had a caseload of 34 cases and had requested a caseload of 17, or at most 25, due to "too much stress for [her] body to handle" but was refused. She suffered eight attacks of bronchitis within six months thereafter. Plaintiff complained of the condition of the case files transferred to her, and defended herself against an assertion that she was responsible for a family contacting the state office to complain. She also explained why she had missed a scheduled court hearing. Ms. Shedd also said when she was hired, she was told that overtime occasionally would be required, but that it was a way of life in DHR. In closing, plaintiff asked DHR to adhere to the ADA, as well as the consent decree in assigning her caseload.

After its receipt of plaintiff's more definite statement, defendant filed a response in which it included a request that its previously filed motion to dismiss be considered as a motion for summary judgment [Document #12]. Defendant also included exhibits with its response. Defendant has asserted additional grounds for its motion for summary judgment. It contends that any claims by plaintiff under the ADA or ADEA are barred by the applicable statute of limitations and by failure to exhaust administrative remedies. It also is argued that plaintiff suffered no adverse employment action to support an ADEA or ADA claim.

6

On March 31, 1999, the court entered an order advising plaintiff that defendant's motion to dismiss would be considered as a motion for summary judgment and setting a schedule for submission of briefs and exhibits. Plaintiff sought and received an extension of time in which to respond to the motion for summary judgment.[2] The matter is now ready for disposition.

## DISCUSSION

### 42 U.S.C. § 1983

It is well established that the Eleventh Amendment to the United States Constitution bars § 1983 claims in federal court against the state or an agency of the state. *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). *See also, Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The Eleventh Amendment applies to claims for injunctive relief as well as claims for monetary relief. *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). *See also Gamble v. Florida Department of Health and Rehabilitative Services*, 779 F.2d 1509 (11th Cir. 1986). It is clear that DHR is a state agency. *See Ross v. State of Alabama*, 893 F.Supp. 1545, 1550 (M.D.Ala. 1995); *Mitchell v. Davis*, 598 So.2d 801, 806 (Ala. 1992). Therefore, any claim against defendant in this action made pursuant to 42 U.S.C. § 1983 is barred by Eleventh Amendment immunity. Accordingly, defendant's motion for summary judgment with respect to plaintiff's § 1983 claims is due to be granted and those claims dismissed with prejudice.

---

[2] After the entry of the scheduling order, plaintiff sought to engage in discovery related to the merits of her claims. She was advised by the court that the motion for summary judgment was based on procedural issues, such as the statute of limitations and exhaustion of administrative remedies, and unless and until summary judgement was denied on those issues, the extensive discovery on the merits sought by plaintiff, which would include confidential DHR documents, would not be permitted.

7

## ADEA

To establish a *prima facie* case under the ADEA, a plaintiff must prove: (1) that she is a member of the protected group (persons at least 40 years old); (2) that an adverse employment action was taken against her, e.g., discharge, demotion, or failure to hire or recall; (3) that the person hired was from outside the protected group; and (4) that she was qualified for the position for which she was rejected. *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989).

Numerous courts have found that a lateral transfer or denial of a lateral reassignment does not constitute an adverse employment action. *See Burger v. Central Apartment Management, Inc.*, 168 F.3d 875, 879-880 (5th Cir. 1999) (denial of request for purely lateral transfer did not constitute "ultimate employment action") [3]; *Sanchez v. Denver Public Schools*, 164 F.3d 527, 532 n.6 (10th Cir. 1998) ("If a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not

---

[3] The Court in *Burger* also stated:

> Such a refusal is not akin to acts "such as hiring, granting leave, discharging, promoting, and compensating." *Dollis*, 77 F.3d at 782 (citing *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981) (*en banc*)). Although Stancu may have gone through an interview, the result of that meeting would not have altered Stancu's status as an employee already hired by Gables.... Other circuits have been quick to parrot the following passage written by Chief Judge Posner:
>
>> Obviously a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action. A transfer involving no reduction in pay and no more than a minor change in working conditions will not do, either. Otherwise every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit. The Equal Employment Opportunity Commission, already staggering under an avalanche of filings too heavy for it to cope with, would be crushed, and serious complaints would be lost among the trivial.
>
> *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir.1996).

168 F.3d at 880.

8

of itself render the denial or receipt of the transfer adverse employment action."); *Doe v. DeKalb County School District*, 145 F.3d 1441, 1452 (11th Cir.1998) (transfer was not a demotion; transfer had same salary, benefits, seniority, and relative level of prestige); *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir.1997) (same); *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir.1996) (same); *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 886 (6th Cir.1996) (transfer that did not entail a loss of pay, benefits, duties, or prestige was not adverse action); *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir.1996) (purely lateral transfer which does not involve demotion in form or substance was not adverse action); *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993) (lateral transfer with semantic change in title and alteration of job responsibilities not adverse employment action); *Grier v. Henry Ford Hospital*, 946 F.Supp. 520 (E.D.Mich. 1996) (denial of lateral transfer not adverse employment action under ADEA, where employer's alleged failure to grant such transfer had no adverse impact on employee; pay and hours for the two positions were the same, and position employee sought did not offer greater security, greater potential for promotion, or other tangible benefits).

Because plaintiff did not suffer adverse employment action by the denial of a lateral reassignment to the position of Prescott House Liaison, she cannot establish a *prima facie* case of age discrimination.

Ms. Shedd's ADEA claim is also subject to dismissal for failure to satisfy procedural prerequisites to suit. The Eleventh Circuit Court of Appeals, in *McBrayer v. City of Marietta*, 967 F.2d 546, 547 (11th Cir. 1992), stated:

> There are two statutes of limitation in age discrimination cases under the ADEA: first, a charge of discrimination must be filed with the EEOC "within 180 days after the alleged unlawful practice occurred." §29 U.S.C. 626(d)(1). The filing with the EEOC is required before

9

> a suit may be brought. Second, the lawsuit must be brought within
> two years after the cause of action accrued, except that a cause of
> action arising out of a willful violation may be commenced within
> three years. §§ 29 U.S.C. 255, 626(e).

*See also Burnam v. Amoco Container Co.*, 755 F.2d 893, 894 (11th Cir. 1985) (employee claiming violation of ADEA must file charge of discrimination with EEOC within 180 days of alleged unlawful employment action). A review of the submissions in this action show that the alleged discriminatory action, the denial of the Prescott House Liaison position, occurred in April or May 1996. Plaintiff never filed a charge of age or disability discrimination with the EEOC, either within 180 days of the alleged adverse action or at any time prior to the commencement of this action in October 1998. Her October 1, 1996, memorandum to the Office of Civil Rights does not satisfy this requirement, nor does her December 1997 charge of discrimination in termination based on race and sex. Further, Ms. Shedd's correspondence to Vernon Morgan and Lucia Parsons and her later EEOC charge show she was not unfamiliar with her right to file a discrimination charge with the EEOC.

Based on the foregoing, the court concludes that defendant's motion for summary judgment with respect to plaintiff's ADEA claims is due to be granted and those claims dismissed with prejudice.

## ADA

The Americans with Disabilities Act of 1990, as amended in the Civil Rights Amendments Act of 1991 (ADA), 42 U.S.C. § 12101, *et seq.*, prohibits covered employers from discrimination based upon the known physical or mental impairments of a qualified individual with a disability. 42 U.S.C. § 12112. To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that

10

he or she (1) has a disability; (2) is a qualified individual; and (3) was unlawfully subjected to discrimination because of his or her disability. *Harris v. H & W Contracting Co.*, 102 F.3d 516, 519 (11th Cir. 1996); *Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir. 1996). The ADA incorporates by reference the procedural provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2000e-17. *See* 42 U.S.C. § 12117(a). Although the timeliness of filing an EEOC charge is in the nature of a statute of limitations, *see Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), the act of filing is a jurisdictional prerequisite to the commencement of a Title VII, or ADA, suit in federal court. *See Thomas v. Kroger Co.*, 24 F.3d 147, 150 (11th Cir. 1994); 42 U.S.C. § 2000e-5(e). Thus, unless a plaintiff has filed a charge with the EEOC and received a right to sue letter, the district court lacks subject matter jurisdiction to hear that plaintiff's ADA claim. *See Stewart v. County of Brown*, 86 F.3d 107 (7th Cir. 1996); *McSherry v. Trans World Airlines, Inc.*, 81 F.3d 739 (8th Cir.1996). Plaintiff has not filed a claim of disability discrimination with the EEOC with regard to the refusal to reassign her to the Prescott House Liaison position or her termination from employment with DHR. Her EEOC discrimination charge based on race and sex does not satisfy the requirement. Therefore, this court lacks subject matter jurisdiction over her ADA claims.

Accordingly, defendant's motion for summary judgment with respect to plaintiff's ADA claims is due to be granted and those claims dismissed with prejudice.

### Retaliation

Plaintiff apparently claims she was terminated from her DHR job in retaliation for her complaints about her caseload vis-a-vis a consent decree requiring social workers' caseloads to be

11

at some level not revealed in the submissions of the parties to this action. In essence, plaintiff claims she was fired for exercising her First Amendment rights. Such a suit may be brought pursuant to 42 U.S.C. § 1983 against individuals or municipalities alleged to have been involved in the actions. *See, e.g., Walker v. Schwalbe*, 112 F.3d 1127 (11th Cir. 1997); *Bryson v. City of Waycross*, 888 F.2d 1562 (11th Cir. 1989). However, as discussed above, absolute immunity bars any such suit against DHR because it is a state agency. Therefore, defendant's motion for summary judgment as to plaintiff's retaliation claim is due to be granted and that claim dismissed with prejudice.

A final judgment in accordance with this memorandum opinion will be entered contemporaneously herewith.

DONE this 6th day of August, 1999.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE